UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


GEORGE M. MILLER

      Petitioner,

v.                                                    Case No. 8:06-cv-998-T-23TBM

SECRETARY, Department of Corrections,

      Respondent.

_____/


## **O R D E R**

George M. Miller petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state convictions for burglary with battery, attempted carjacking, making a false application for a driver's license, and resisting arrest without violence. Miller alleges multiple claims of trial court error and ineffective assistance of trial counsel. Numerous exhibits ("Respondent's Exhibit __") support the response.

A jury convicted Miller of all charges. The state appellate court affirmed Miller's convictions for burglary, making a false application for a driver's license, and resisting arrest without violence but reversed the attempted carjacking conviction.[1]

_____

[1] The state appellate court held that the trial court erred by denying Miller's request for a specific jury instruction on a necessarily lesser-included offense (Respondent's Exhibit 4).

On remand, Miller pleaded guilty to the attempted carjacking charge.  He filed no appeal of that conviction.

Miller next filed a state Rule 3.850 motion to vacate.  The state post-conviction court denied relief in part and held an evidentiary hearing on one claim of ineffective assistance of trial counsel (Respondent's Exhibit 13).  Following the evidentiary hearing, the state court entered a final order denying relief (Respondent's Exhibit 18) and Miller appealed.  The state appellate court affirmed the denial of relief in a per curiam decision without a written opinion (Respondent's Exhibit 22).  Miller's subsequent challenges to his convictions - three state Rule 3.800(a) motions to correct an illegal sentence (Respondent's Exhibits 30, 38)[2], a petition for a writ of extraordinary review (Respondent's Exhibit 28), a state petition for a writ of habeas corpus (Respondent's Exhibit 36), two additional Rule 3.850 motions to vacate (Respondent's Exhibits 39, 46), and an all writs/petition for writ of habeas corpus (Respondent's Exhibit 51), were likewise denied.  The instant Section 2254 petition followed.

## STANDARD OF REVIEW

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding.  Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a

---

[2]  The record contains no copy of Miller's first Rule 3.800(a) motion.

highly deferential standard for federal court review of state court adjudications, states

in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002); <u>Brown v. Head</u>, 272

F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

Miller's Rule 3.850 motions to vacate were affirmed on appeal in three per curiam decisions without written opinions (Respondent's Exhibits 22, 42, 49).  The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Miller bears the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001).  Consequently, a presumption of correctness attaches to the finding of facts in the trial court's rejection of Miller's post-conviction claims of ineffective assistance of counsel.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Miller claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46

F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to Strickland, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice.  Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.");  Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland v. Washington, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland v. Washington, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or

omissions were outside the wide range of professionally competent assistance."

Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Miller must demonstrate that counsel's error prejudiced the defense. Strickland v. Washington, 466 U.S. at 691-92. To meet this burden, Miller must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91. Miller cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So,

-6-

omissions are inevitable. . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

## **FACTS**[3]

Miller went to the Florida Department of Highway Safety and Motor Vehicles (DHSMV) and tried to obtain an identification card using false documents.  A suspicious DHSMV employee called police.  When confronted by police, Miller fled on foot followed by several police officers.  Miller ran to the car of Russell Elwell (the burglary victim) and attempted to pull Elwell out of his car.  When he failed to remove Elwell from the car, Miller ran to another car occupied by Philip and Teresa Pendleton (the victims of the attempted carjacking). Miller unsuccessfully tried to pull Philip Pendleton, the driver, from his car.  While Miller attempted to commandeer the cars, police shot him.  After subduing Miller, police arrested him and transported him to the hospital for treatment of his injuries.

**Ground One**

Miller alleges that because the trial court erred by restricting his right to cross-examine Deputy Charles Street, he had to call a witness to elaborate upon Deputy Street's testimony, and as a consequence, Miller lost the final closing argument.  The respondent argues in response that because Miller challenged on

---

[3] This summary of facts derives from Miller's brief on direct appeal (Respondent's Exhibit 1) and testimony adduced at trial.

direct appeal only a particular evidentiary ruling by the trial judge and failed to argue a violation of a federal constitutional right, Miller's claim warrants no relief.  Miller argues in reply that the trial court's error resulted in a denial of his rights to due process and equal protection.  He further contends that references in his initial state appellate brief to his right to cross-examination and citations to various state court cases sufficed to alert the state court of a federal confrontation clause claim.  Miller's argument lacks merit.

Miller presented this claim on direct appeal but failed to allege the violation of a federal constitutional right.  In his appellate brief (Respondent's Exhibit 1), Miller argued that the trial judge's improper restriction on cross-examination violated state procedural rules and state law.  Miller relied upon only state authority and treatises to support his argument that the trial judge improperly denied him the opportunity to have the final closing argument.[4]  Consequently, his federal confrontation clause claim remains unexhausted.

Before a federal court may grant habeas relief, a federal habeas petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1)(A), (c); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. at 842.  See also

---

[4]    At the time of Miller's trial, Fla. R. Crim. P. 3.250 provided that "a defendant offering no testimony in his or her own behalf, except the defendant's own, shall be entitled to the concluding argument before the jury."

-8-

Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." Pruitt v. Jones, 348 F.3d 1355, 1358 (11th Cir. 2003).

A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." Pruitt v. Jones, 348 F.3d at 1358-59 (quoting O'Sullivan v. Boerckel, 526 U.S. at 845). To exhaust a claim, a petitioner must present the state court with the particular legal basis for relief in addition to the facts supporting the claim. See Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)). The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004).

Miller failed to present the federal component of ground one to the state court on direct appeal. Consequently, he deprived the state courts of a "full and fair

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. at 845. A federal court cannot grant a Section 2254 petition unless the petitioner has exhausted every available state court remedy. Snowden v. Singletary, 135 F.3d at 735. Miller's exclusively state law arguments presented on direct appeal leave the exhaustion requirement unsatisfied. Duncan v. Henry, 513 U.S. at 365. See also Baldwin v. Reese, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). Ground one remains unexhausted, precluding federal review.

Miller cannot return to state court to present a federal claim based on the state trial court's alleged denial of his federal right to confrontation. Because he could have raised and preserved a federal constitutional claim on direct appeal, state procedural rules preclude Miller from asserting the claim collaterally in a Rule 3.850 motion. See e.g. Childers v. State, 782 So.2d 946, 947 (Fla. 4th DCA 2001) ("The law is clear that where an issue could have been raised on direct appeal, it is not the proper subject for a Rule 3.850 motion.") (citations omitted). The state procedural rules also preclude a second direct appeal. Consequently, ground one is procedurally defaulted.

Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or

the fundamental miscarriage of justice exception is applicable." <u>Smith v. Jones</u>, 256 F.3d at 1138.  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999).  <u>See</u> <u>also</u> <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions.  <u>United States v. Frady</u>, 456 U.S. 152 (1982).  In other words, he must show at least a reasonable probability of a different outcome.  <u>Henderson v. Campbell</u>, 353 F.3d at 892; <u>Crawford  v. Head</u>, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice.  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000); <u>Murray v. Carrier</u>, 477 U.S. at 495-96.  A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent.  <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995); <u>Henderson v. Campbell</u>, 353 F.3d at 892.  This exception requires a petitioner's "actual" innocence.  <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error.  <u>Schlup v. Delo</u>, 513 U.S. at 327.

Miller fails to demonstrate cause and prejudice excusing his default.  In an apparent effort to overcome the default, Miller claims actual innocence.  "'[A]ctual

innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 623-24 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)). Schlup observes "that a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence - - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." Schlup v. Delo, 513 U.S. at 324.

Miller argues[5] (Doc. 58) that the results of forensic testing conclusively refuted Deputy Street's trial testimony that he shot Miller while Miller was facing him. In support of this claim, Miller presents copies of two incident reports prepared by the Pinellas County Sheriff's Office that explain the trajectory of a bullet that passed through the door of the Elwell's vehicle.[6] He attributes one of these reports to forensic specialist John Mauro. Miller argues that Mauro's findings, which are supported by photographs, would have shown that Deputy Street could not have shot Miller from the position he claimed and that a man of Miller's stature[7] could not have positioned himself between the car's driver side doors.

_____

[5]   Miller argues that he is actually innocent of the burglary with battery charge (Doc. 58, p. 13). The respondent filed no response to Miller's actual innocence claim.

[6]  The bullet passed through the open driver's door and struck the rear driver's side door.

[7]  Miller claims that he stands six feet two inches tall and weighs 230 pounds (Doc. 2, Attach. 2, p. 13).

Miller also presents an affidavit from Doctor Jon Thogmartin[8] in which Thogmartin concludes that the bullet that struck Martin in the hip entered his back and exited his abdomen.  Miller claims that this conclusion supports the defense theory that Miller sought refuge in Elwell's car to avoid being shot by police and that he lacked the intent necessary to commit a burglary with battery.  Miller claims that this evidence, not presented at trial, proves his innocence of the burglary with battery conviction.

Miller fails to show factual innocence.  He would have known at the time of trial where the bullet entered and exited his body.  Whether the bullet entered from the front or the back has no bearing upon Miller's intent to commit the burglary.  At trial, counsel advanced the theory that Miller sought refuge in the car to escape gunfire and that Miller lacked the intent to commit the burglary.  The jury rejected this theory.  Miller presents insufficient evidence to support his actual innocence claim.  The evidence likewise fails to support his claim of trial court error.  See Schlup v. Delo, 513 U.S. at 315 ("[A] claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'") (quoting Herrera v. Collins, 506 U.S. 390, 404 (1993)).  Because Miller fails to proffer specific facts showing an exception to procedural default, Hill v. Jones, 81 F.3d 1015 (11th Cir. 1996), ground one is procedurally barred from federal review.

---

[8]  Thogmartin prepared his affidavit while retained as an expert witness for the defense in Miller's 2002 federal civil rights action against Deputy Street in this district in Case No. 8:02-cv-1080-T-24MSS.

**Ground Two**

Miller alleges that the trial court erred by denying his request for a necessity instruction. The respondent argues that Miller fails to present a cognizable federal claim. Miller argues in reply that the trial court's alleged error resulted in a denial of his right to due process and his right to a fair trial. This claim warrants no relief.

The state appellate court rejected this claim on direct appeal (Respondent's Exhibit 4). Miller failed to articulate in his appellate brief a violation of any federal constitutional right. Rather, he argued that the trial court's failure to instruct the jury on the necessity defense resulted in reversible error under state law (Respondent's Exhibit 1). Miller's exclusively state law argument presented on direct appeal leaves the exhaustion requirement unsatisfied. Duncan v. Henry, 513 U.S. at 365. See also Baldwin v. Reese, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). Ground two remains unexhausted, precluding federal review.

Miller cannot return to state court to present his federal claim. Because he could have raised and preserved a federal constitutional claim on direct appeal, state procedural rules precluded Miller from asserting the claim collaterally in a Rule 3.850 motion. See e.g., Childers v. State, 782 So.2d 946, 947 (Fla. 4th DCA 2001) ("The law is clear that where an issue could have been raised on direct appeal, it is not the proper subject for a Rule 3.850 motion.") (citations omitted). The state procedural

rules also preclude a second direct appeal.  Consequently, ground two is procedurally defaulted.

Miller fails to demonstrate cause and prejudice excusing his default.  <u>See</u> <u>Smith v. Jones</u>, 256 F.3d at 1138.  As discussed in ground one, Miller's claim of actual innocence fails to establish that the fundamental miscarriage of justice exception applies.  <u>See</u> <u>Henderson v. Campbell</u>, 353 F.3d at 892.  Miller's failure to proffer specific facts showing an exception to procedural default renders ground two procedurally barred from federal review.[9]

**Ground Three**

Miller contends that the trial court erred by overruling his objection to the introduction of evidence of an outstanding arrest warrant from Maryland.  Miller presented this claim to the state court on direct appeal arguing that the admission of the evidence violated state law and state evidentiary rules.  He failed to allege the violation of any federal constitutional right.  Miller argues in reply (Doc. 31) that the trial court's alleged error resulted in denial of his right to due process and his right to a fair trial.

"As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence."  <u>Alderman v. Zant</u>, 22 F.3d 1541, 1555 (11th Cir. 1994).  Whether the state trial court erroneously admitted

---

[9]  Even absent the procedural bar, the claim warrants no federal habeas relief.  As the respondent correctly argues, a jury instruction is a matter of state law, not cognizable on federal habeas corpus review.  <u>See</u> 28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. at 67 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

the challenged testimony is a matter of state law. A claim that a state trial court erred in admitting evidence under state laws or evidentiary rules provides no basis for federal habeas corpus relief because the claim presents no federal constitutional question. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. at 67. The limitation on federal habeas review to a claim of federal constitutional error applies with equal force when a petition, which actually involves a state law issue, is couched in terms of a Fourteenth Amendment due process violation. Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988); Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976). See also Marshall v. Lonberger, 459 U.S. 422, 438 n. 6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."). Consequently, ground three warrants no federal habeas relief.[10]

**Ground Four**

Miller contends that trial counsel rendered ineffective assistance by failing to call forensic specialist John Mauro to testify at trial. Miller argues that Mauro would have provided favorable testimony supporting the defense theory that Deputy Street shot Miller before Miller reached Elwell's car. Miller further argues that the results of Mauro's forensic tests showing the trajectory of the bullet that passed through the

---

[10] Alternatively, even if considered on the merits and affording the claim its most liberal construction, the same result obtains under AEDPA standards. Generally, a state court evidentiary ruling cannot rise to the level of a federal due process violation "unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (quoting Patterson v. New York, 432 U.S. 197, 202-02 (1977)). Applying the AEDPA standard, the admission of evidence about Miller's Maryland warrant was not so fundamentally unfair as to violate Miller's due process rights.

door of Elwell's car[11] would have substantiated Miller's theory that he was shot before reaching Elwell's car and that due to his large stature he could not have been positioned inside the car door when he was shot.[12]  Miller claims that if counsel had called Mauro to testify, the prosecution would have failed to prove the intent element of the burglary charge.

The state court rejected this claim in Miller's first Rule 3.850 motion:

Defendant contends that counsel failed to call forensic specialist John Mauro whose testimony would support the defense theory that Deputy Street shot at Defendant before he reached Mr. Elwell's car (burglary charge).  Defendant suggests that the trajectory would show that Defendant could not be positioned inside the car door holding the victim as Deputy Street testified.

John Mauro, a forensic specialist, examined the automobile that Defendant entered during a police foot chase.  John Mauro's deposition indicates that based on the trajectory of one of three bullets (that was thought to leave three impressions) he theorized that Dep. Street fired his weapon when the vehicles driver side door was open as the bullet passed through the driver's exterior and interior door and hitting the passenger's door. [FN].

[FN] The witness was unable to ascertain a trajectory for the second bullet since it logged [sic] itself in the original impact point.

Mr. Mauro explained the weaknesses in his own theory since the trajectory would vary based on the motion of the car and open door so

_____

[11]  One bullet passed through the open driver's side door of Elwell's car and impacted the driver's side passenger door without exiting.  After disassembling the driver's side passenger door, forensic specialists recovered the bullet.

[12]  Deputy Street testified on direct examination that he shot at Miller three times while Miller was attempting to get Elwell out of the car.  (Respondent's Exhibit 53, Vol. IV, p. 229).  Street further testified that he again shot at Miller while Miller was attempting to pull Philip Pendleton from his car. (Respondent's Exhibit 53, Vol. IV, p. 233).

that he could not testify specifically how wide the opening in the door was.

Moreover, [Elwell] testified consistently with Dep. Street that when he heard the shot, Defendant was inside the car door and had grabbed the victim's neck. The State could still argue based on [Elwell]'s testimony that Dep. Street fired his weapon when Defendant was assaulting [Elwell]. Consequently, contrary to Defendant's contention, Mr. Mauro's testimony lends only ambiguous support to his necessity defense, that Defendant attempted to enter the automobile to prevent himself from being shot. As this expected testimony is spurious [sic] at best to his defense, Defendant has not shown that had this testimony been presented to the jury that there is a reasonable probability the trial's outcome would have been different, and therefore, this claim is denied.

(Respondent's Exhibit 13, p. 3) (court's record citations omitted).

Under Florida law, "the failure to call witnesses can constitute ineffective assistance of counsel if the witness may have been able to cast doubt on the defendant's guilt, and the defendant states in his [post-conviction] motion the witnesses' names and the substance of their testimony, and explains how the omission prejudiced the outcome of the trial." Marrow v. State, 715 So.2d 1075 (Fla. 1st DCA 1998). "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)[13] (citations omitted). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent

_____

[13] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

-18-

attorney would have chosen it." Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099

(11th Cir. 2007). The reasonableness of counsel's challenged conduct on the facts of

the case viewed as of the time of counsel's conduct decides an ineffectiveness claim.

Strickland v. Washington, 466 U.S. at 690.

In his deposition,[14] Mauro testified that he could not definitively opine how wide

the car door was open when the bullet penetrated it.[15] Miller presents no support for

---

[14] The record contains no complete transcript of Mauro's deposition. Excerpts of the
deposition are attached as an exhibit to the state post-conviction court's order (Respondent's Exhibit
13) denying relief on Miller's first Rule 3.850 motion.

[15] Mauro testified in his deposition:

Q:   So [the bullet] went in the exterior part of the door, it went through the
     interior part of the door and came to rest here on the exterior portion of
     the door. That would lead you to believe that the door was opened
     just as the amount is shown in the photographs?

A:   Actually it could have been closed more than that or open more than
     that. There is a variance.

Q:   How much variance would you estimate?

A:   I don't know, sir.

Q:   Well, presumably no more than an inch either way?

A:   Again, I don't know sir. There's  - - by opening the door more and
     repositioning the laser, you could still line it up. So opening it or
     closing it, again, there's a variance.

A:   Did you try using a rod?

Q:   No, sir. Just the laser.

A:   I guess what I'm curious about is the variance. Because it would
     appear that if there's a hole on the exterior of the door and a hole on
     the interior of the door and also where the bullet comes to rest, it
     would seem that there wouldn't be a great variance. Did you open the
     door any or close it any and did the laser still shine there?

A:   That is correct, yes.

(continued...)

his speculative contention that Mauro would have testified favorably for the defense if called as a witness at trial. Miller fails to demonstrate that trial counsel's performance fell outside the bounds of reasonable professional judgment. Waters v. Thomas, 46 F.3d at 1512; Chandler v. United States, 218 F.3d at 1314. Miller likewise fails to show that if counsel had called Mauro as a witness the jury would have acquitted Miller. Miller meets neither the deficient performance requirement nor the prejudice requirement of Strickland. See Strickland v. Washington, 466 U.S. at 691-92. The state court in rejecting Miller's claim neither unreasonably applied Strickland nor unreasonably determined the facts. See 28 U.S.C. § 2254(d)(1), (2). Ground four warrants no federal habeas relief.

**Ground Five**

Miller contends that trial counsel rendered ineffective assistance by failing to call John Mauro, Lisa Wentz, and Charles Cruz[16] as witnesses after counsel advised Miller of the lost opportunity to present the first and last closing arguments. See Fla. R. Crim. P. 3.250. Miller claims that each witness would have refuted Deputy Street's

---

(...continued)
Q:      About how far could you open it and close it?

A:      A little bit more than you're seeing there [in the photograph] and slightly less that what you see there. And again, it's a variance because of the movement of the vehicle and movement of the door, while the vehicle was in motion.

(Respondent's Exhibit 13, excerpt of Mauro deposition attached as exhibit D to post-conviction court's order denying relief on Miller's first Rule 3.850 motion, pp. 6-7).

[16] The respondent erroneously states (Doc. 21, p. 25) in ground five that Miller refers to witnesses John Mauro, Lisa Wentz, and Dr. Stephen Epstein. In his petition, Miller specifically faults counsel for failing to call Mauro, Wentz, and Cruz. Miller names Dr. Epstein in neither his petition (Doc. 1), supporting memorandum (Doc. 2), nor reply (Doc. 31).

testimony, would have supported Miller's theory that Miller sought refuge in Elwell's car after Deputy Street shot him, and would have proven that Miller lacked the intent necessary to commit the burglary offense. The state court rejected these allegations in Miller's first Rule 3.850 motion:

> Defendant contends that counsel failed to call forensic specialist Lisa A. Wentz whose testimony would support the defense theory that Deputy Street shoot [sic] at Defendant before he reached the burglary with assault victim's car.

> As the crux of this claim is identical to ground three [of Miller's Rule 3.850 motion claiming ineffective assistance for failure to call John Mauro as a witness], this claim is denied based on the same reasoning . . . .

> Defendant contends that after losing the opportunity for first and last closing arguments, that counsel was deficient in failing to call additional witnesses to support his defense.

> As to those subparts of the claim regarding forensic experts [Mauro and Wentz], these issues have been addressed [in previous claims in the Rule 3.850 motion]. . . . Defendant also states that counsel should have called Charles Cruz, who was deposed, to testify that "[defendant] was shot before he reached the car and upon him running to the car for refuge Deputy Street discharged his weapon 2 more times." The witness testified in deposition that he did not see the shots and only heard them. As the record conclusively refutes the claim, this claim is denied.

(Respondent's Exhibit 13, p. 4) (court's record citations omitted).

Miller asserts that if counsel had called Mauro as a witness at trial, Mauro's testimony would have shown a "strong probability that the first shot fired by Deputy Street occurred before [Miller] reached any car." As discussed in ground four, Miller fails to demonstrate that Mauro's testimony would have supported his necessity defense.

In his reply (Doc. 31),[17] Miller argues that forensic specialist Lisa Wentz would have testified that she conducted various forensic tests and concluded that the car door was only partially open when Miller was shot. Miller asserts that this testimony, like Mauro's, would have contradicted Deputy Street's testimony that Elwell's car door was "wide open" when he fired three shots at the car.

Miller presents no evidence to support his assertion that Wentz's proposed testimony would have refuted Deputy Street's testimony or resulted in his acquittal of the burglary charge. He attaches to his claim of actual innocence (Doc. 58) a copy of a forensic report that he attributes to Wentz that states that the laser trajectory "depicted the front left door [of Elwell's car as] being partially open during the time of the shooting." (Doc. 58, attachment to actual innocence claim, Pinellas County Sheriff's Office Incident Report #00-64564/39).[18] Even assuming, arguendo, that Wentz prepared the report, its contents are insufficient to substantiate Miller's claim. Miller fails to demonstrate that Wentz would have testified as he claims and fails to show that the testimony would have resulted in his acquittal of the burglary charge. See Strickland v. Washington, 466 U.S. at 694.

Miller's assertion that counsel rendered ineffective assistance by failing to call Charles Cruz as a witness likewise lacks merit. Miller claims that Cruz's deposition testimony that he heard two shots while Miller was at Elwell's car would have

---

[17] Miller failed to articulate the substance of Wentz's testimony in either his petition (Doc. 1) or his supporting memorandum (Doc. 2). He presents for the first time in his reply the testimony he believes Wentz would have offered if she had been called as a witness at trial.

[18] Miller claims that Wentz prepared this report. The report bears no identification of its writer.

contradicted Deputy Street's testimony that he fired three shots at Miller and would have corroborated Miller's theory that he sustained one gunshot wound before reaching Elwell's car.

Cruz testified in his deposition that he heard three distinct shots fired but admitted that he did not see a police officer fire any of the shots:

Q: Let me stop you for a minute. There came a time when the black man crossed in front of the building, the white bank building out of your sight?

A: Yeah.

Q: About how far were the police behind him?

A: Oh, maybe about 20 yards, 20, 30 yards.

Q: And there came a time when the police passed in front of the building and were out of your vision?

A; Uh-huh.

Q: How long was it after they passed out of your vision that you heard the pop?

A: God, maybe about a minute. It just happened so fast.

Q: Okay. Then what did you see?

A: They were running back the other way now (indicating).

Q: Did you see the black man?

A: Yes. He was still running.

Q: What was he doing?

A: He was running?

Q: Which direction was he running now?

A: West.

Q:      When you say he was running diagonally, he was running - -

A:      East.

Q:      And then the next time you saw him, he was running west?

A:      Right.

Q:      When you see he's running, is he just - - where is he running?

A:      At the time he was in the parking lot.

Q:      At the time he was in the parking lot.

A:      No, I mean - -

Q:      Oh, you mean when he was running back when he was heading west?

A:      Right.

Q:      I think he was out on the grassed area (indicating).

Q:      On the other side, the north side of the road?

A:      No.  He was still on the south side, but it was on the grassed area (indicating).

Q:      All right.  And then what happened?

A:      That's when I heard the pop.  And just then I see the two police officers coming again, and the black man was ahead of them.  Then I heard two more shots, and then I assume there were shots at that time.

Q:      All right.  Did you see any of this?  Did you see the shots being fired?

A:      No.  No.  No.  Just heard them.

Q:      All right.  Is there some reason why you couldn't see them?

A:    Cars.

Q:    All right, that's right.  The large parking lot between where
      you were?

A:    Exactly.  There was a lot of cars there, right.

(Respondent's Exhibit 13, excerpt of Cruz deposition attached as exhibit E to

post-conviction court's order denying relief on Miller's first Rule 3.850 motion, pp.

5-7).[19]

Cruz's testimony, while arguably supporting Miller's contention that the three

shots were not fired in succession, fails to substantiate Miller's claim that he was hit

by one of the shots before getting to Elwell's car.  Cruz did not see the shots fired.

Miller presents no evidence showing that Cruz saw a bullet hit Miller or that the first

"pop" that Cruz heard was a gunshot that hit Miller.  The speculative contention that

Cruz would have testified as Miller hypothesizes lacks merit.

Miller fails to demonstrate that trial counsel's performance fell outside the

bounds of reasonable professional judgment.  <u>Waters v. Thomas</u>, 46 F.3d at 1512;

<u>Chandler v. United States</u>, 218 F.3d at 1314.  He likewise fails to show that if counsel

had called the witnesses he now suggests, the jury would have acquitted him.[20]

Miller fails to meet either the deficient performance requirement or the prejudice

---

[19]  The record contains no complete transcript of Cruz's deposition.

[20]  Miller presents no affidavit from either Mauro, Wentz, or Cruz attesting to the facts that Miller
speculatively asserts they would have testified to at trial.  <u>See</u> <u>United States v. Ashimi</u>, 932 F.2d 643,
650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented
in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the
testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance
claim.") (footnotes omitted).

requirement of Strickland.  See Strickland v. Washington, 466 U.S. at 691-92.  The

state court neither unreasonably applied Strickland nor unreasonably determined the

facts in denying this claim.  See 28 U.S.C. § 2254(d)(1), (2).  Ground five warrants no

federal habeas relief.

**Grounds Six and Nine**

In ground six, Miller contends that the state court erred during the sentencing

hearing by overruling Miller's hearsay objection to the prosecution's introduction of

documents supporting a finding that Miller qualified as a violent career criminal.  He

argues that the state court failed to follow state procedure resulting in an illegal

sentence.  In ground nine, Miller contends that the state court lacked proof of the

predicate prior convictions necessary under state law to sentence Miller as a violent

career criminal.[21]

To the extent that Miller argues trial court error under state sentencing

guidelines and state law, grounds six and nine warrant no federal habeas relief

because the claims assert no federal constitutional claim.  See 28 U.S.C. § 2254(a);

Estelle v. McGuire, 502 U.S. at 67.  In his federal habeas petition and in his reply to

the response Miller's argument that these errors violated his right to due process and

to equal protection is insufficient to warrant review on the merits because Miller failed

to argue a federal constitutional violation when he presented these claims both to the

state court on direct appeal and in his various state post-conviction motions.  State

---

[21]  The state courts rejected all of Miller's challenges to his sentence both on direct appeal and
in numerous state post-conviction motions.  See Respondent's Exhibits 1, 4, 25, 31, 38, 40, 51, 52.

procedural rules preclude Miller's returning to state court to present his federal claims and render grounds six and nine procedurally defaulted.

Miller fails to demonstrate cause and prejudice excusing his default, see <u>Smith v. Jones</u>, 256 F.3d at 1138, and his claim of actual innocence fails to establish that the fundamental miscarriage of justice exception applies. See <u>Henderson v. Campbell</u>, 353 F.3d at 892. Miller's failure to proffer specific facts showing an exception to procedural default renders grounds six and nine procedurally barred from federal review.[22]

**Ground Seven**

Miller contends that his trial counsel rendered ineffective assistance by abandoning without consulting Miller the planned defense of necessity and by foregoing the opportunity to call witnesses to corroborate the defense.

The state court rejected these allegations in Miller's first Rule 3.850 motion:

Defendant contends that counsel was ineffective in abandoning during the trial the defense of excessive force agreed to by Defendant.

The record conclusively refutes Defendant's claim that counsel did not present a necessity (or excessive force) defense to burglary of a vehicle and carjacking. Counsel argued in opening and closing statements based on the evidence that Defendant's intent was to seek the vehicles' shelter and protection from police bullets. This claim is denied.

---

[22] Even assuming exhaustion of a federal due process claim and an equal protection claim, grounds six and nine warrant no relief because the underlying basis for the claims is the application of state sentencing guidelines. A federal court cannot review a state's alleged failure to adhere to its own sentencing procedures. <u>Branan v. Booth</u>, 861 F.2d at 1508 (<u>citing Jones v. Estelle</u>, 622 F.2d 124, 126 (5th Cir.), <u>cert.</u> denied, 499 U.S. 996 (1980)). The limitation on federal habeas review to claims of federal constitutional error applies with equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process. <u>Branan v. Booth</u>, 861 F.2d at 1508; <u>Willeford v. Estelle</u>, 538 F.2d at 1198.

(Respondent's Exhibit 13, p. 4) (court's record citations omitted).

The record refutes Miller's contention that trial counsel failed to pursue a necessity defense. Trial counsel argued in his opening statement that Miller entered Elwell's and Pendleton's vehicles to shelter himself from police gunfire. (Respondent's Exhibit 53, Vol. III, pp. 175-78). Trial counsel reiterated this theory in closing argument (Respondent's Exhibit 53, Vol. VI, pp. 206-07, 211-13). Consequently, Miller cannot establish either deficient performance or resulting prejudice, leaving the requirements of Strickland unsatisfied. This claim warrants no federal habeas relief.

**Ground Eight**

Miller contends that the state post-conviction court's denial of a claim of ineffective assistance of counsel presented in his first Rule 3.850 motion resulted in an unreasonable determination of the facts. Miller's challenge to the state court's decision asserts no federal constitutional violation. A federal court is not the appropriate forum to challenge the process afforded in state collateral proceedings because the challenge attacks a proceeding collateral to the prisoner's confinement and not the confinement itself. Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (a habeas claim that the state trial court violated a petitioner's due process rights because the court failed to conduct an evidentiary hearing and attach to its opinion

pertinent portions of the record resolved only issues unrelated to the cause of petitioner's detention and stated no basis for habeas relief).  Consequently, this claim of error by the state post-conviction court warrants no relief.

To the extent that Miller's claim, liberally construed, asserts a substantive ineffective assistance of counsel claim, the claim warrants no relief.[23]  In his first Rule 3.850 (Respondent's Exhibit 12), Miller argued that trial counsel failed to adequately preserve for appeal an argument that the trial court's restriction on cross-examination of Deputy Street violated Miller's right to a fair trial.  He further argued that because he had to call Deputy Ryan Buckley as a witness after the trial judge sustained the hearsay objection, he suffered prejudice because he lost the final closing argument.[24]  The state court rejected this claim after an evidentiary hearing:

> [I]n his 3.850 motion, the sole issue set for evidentiary hearing is whether counsel was ineffective for failing to properly preserve for appeal a hearsay objection.  The circumstances for the charges occurred when Defendant was at the driver's license [o]ffice at Enterprise and McMullen Booth Roads applying for an identification card.  The clerk suspected fraud and alerted police.  The police arrived to question Defendant when he fled.  The officers pursued him across a parking lot and commercial retail area.  When Defendant reached the congested roadway, he approached two motorists trying to gain entry

_____

[23]  The respondent addresses Miller's claim as one of ineffective assistance rather than error by the state post-conviction court.

[24]  Deputy Buckley participated in the foot chase of Miller.  Defense counsel sought to elicit from Deputy Street what he and Deputy Buckley said to Miller while chasing him.  (Respondent's Exhibit 53, Vol. IV, p. 241).  The prosecutor objected, arguing that Deputy Buckley's statements were hearsay.  The trial judge sustained the objection and advised counsel that he could call Buckley as a witness to testify to his own statements.  (Respondent's Exhibit 53, Vol. IV, p. 243).  After further argument, counsel eventually elected to call Buckley as a witness, resulting in Miller losing the first and last closing argument.  (Respondent's Exhibit 53, Vol. IV, pp. 327-35).

into their automobile. Defendant's burglary and attempted carjacking offenses were based on his conduct with two motorists.

At trial, defense counsel asserted the defense of necessity arguing that Defendant was not attempting to carjack or burglarize any of the motorists, but was trying to shield himself from being shot. Deputy Buckley had yelled during the chase, "stop or I'll shoot." Defendant sought to introduce this statement during Dep. Street's testimony, but the hearsay objection was sustained, and defense counsel called Dep. Buckley, the defense's sole witness, to testify to his own words, thereby waiving first and last final arguments. Later on direct appeal, the appellate court concluded that the State's objection should have been overruled and the testimony permitted, and that the error had not been properly preserved for appeal. See Miller v. State, 870 So. 2d 15 (Fla. 2d DCA 2003).

. . .

In order to prevail on this claim, Defendant bears the burden to show that assuming counsel failed to properly preserve the issue, he suffered prejudice. Ellington [v. State], [841 So. 2d 646], 647 [(Fla. 2d DCA 2003)]; see also Lang v. State, 826 So. 2d 433, 434 (Fla. 2d DCA 2000). Defendant has failed to sustain this burden in showing that counsel's alleged failure to preserve the issue or the trial error affected his appeal or trial.

As argued in the State's Response, despite counsel's failure to preserve the hearsay issue for appeal, the appellate court still granted Defendant a new trial on the attempted carjacking offense. The Second District Court of Appeal reversed the conviction based on the court's denial to instruct the jury on a necessarily lesser-included offense of attempted carjacking, and only considered the failure to preserve the issue on the hearsay matter "because the issue may arise on retrial."[25]

---

[25] Miller raised on appeal (Respondent's Exhibit 1) a substantive claim of trial court error challenging the trial court's restriction on his cross-examination of Deputy Street. The state district court of appeal rejected the claim finding that Miller failed to properly preserve the issue for appeal:

Because this issue may arise on retrial, we point out that the trial court erred in sustaining the State's hearsay objection to a defense question. There were two deputies chasing Miller. The State called Deputy Street as a witness; it did not call Deputy Buckley. In cross-examination, the defense asked Deputy Street to repeat what he and Deputy Buckley were saying as they chased Miller. The defense wanted Deputy Street to testify that he heard Deputy Buckley yell "stop or I'll shoot," to support

(continued...)

-30-

See Miller v. State, 870 So. 2d 15 (Fla. 2d DCA 2003).  Since the evidence excluded as hearsay concerned this offense, even if counsel preserved the issue and assuming the appellate court concluded that reversible error occurred, Defendant received the same result on appeal because the appellate court granted him a new trial based on trial court error on another properly preserved issue.  The Court finds this argument persuasive as to the attempted carjacking offense, but not obviously to the burglary charge.

Defendant next asserts that he suffered prejudice since the Court erroneously prevented Dep. Street from testifying to Dep. Buckley's statement, Defendant was forced to call Dep. Buckley to testify to the statement to sustain his defense.  He asserts that had the court's ruling not required him to waive a second closing argument, that there is a reasonable probability that he could have obtained an acquittal.  The record indicated that counsel did call Dep. Street [sic][26] to testify to the

---

(...continued)

the defense theory that Miller only tried to get into other people's cars to avoid being shot by the police.  The trial court sustained the State's hearsay objection to this question.  As a result of this ruling, Miller called Deputy Buckley as a witness, and Deputy Buckley repeated his statement without objection by the State.  Because Miller called Deputy Buckley as a witness, he lost the right to first and last closing arguments.

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat. (1999).  This testimony was not being elicited to prove that Deputy Buckley was going to shoot Miller if Miller did not stop; it was only sought to show the effect of the statement on Miller.  Therefore, the trial court erred by sustaining the State's hearsay objection.  See Blackwood v. State, 777 So. 2d 399, 407 (Fla. 2000) (holding that deceased victim's statements, as related by victim's daughter, were not hearsay because they were offered only to show their effect upon defendant's state of mind and not the truth of the matter asserted).

However, the issue was not adequately preserved for appeal because defense counsel never proffered the answer.  See § 90.104(1)(b), Fla. Stat. (1999).  When asked what Deputy Street would say, defense counsel stated that he was "not at all certain."  Although the statement later came in when the defense called Deputy Buckley, the record does not show whether Deputy Street heard this statement during the chase.  Therefore, we affirm on this issue.  See Ketrow v. State, 414 So. 2d 298, 299 (Fla. 2d DCA 1982) (stating that proffer is necessary to preserve point for appeal; otherwise appellate court would have to speculate "as to what someone might have said"); Fernandez v. State, 555 So. 2d 437, 438 (Fla. 3d DCA 1990).

(Respondent's Exhibit 4, pp. 3-4).

---

[26]  The state post-conviction court erroneously identified Deputy Street instead of Deputy

(continued...)

"stop or I'll shoot," statement. However, since Defendant did not testify at trial, there was no evidence presented at trial that Defendant actually heard Dep. Buckley's command, interpreted as a threat, and reacted to it as such. At the evidentiary hearing, the State elicited on cross-examination from Defendant that he had testified at a federal proceeding[27] that he had not heard Dep. Buckley's exact words.

---

(...continued)
Buckley.

[27] In June, 2002, after his criminal trial but before filing any post-conviction motion for relief in state court and before the November, 2004, evidentiary hearing on his Rule 3.850 motion, Miller initiated a Section 1983 civil rights action against the Pinellas County Sheriff and Deputy Street arguing violations of his federal constitutional rights resulting from the shooting. See Case No. 8:02-cv-1080-T-24MSS. The case proceeded to trial in 2004. During trial, Miller testified repeatedly that he did not hear what Deputy Buckley said during the foot chase when Miller approached Elwell's and Pendleton's vehicles:

    Q:    Okay. Did you try anything - - to do anything different than you had planned because of the bullet?

    A:    If I can explain, yes.

    Q:    Yes, sir.

    A:    Well, when I first thought of running, I ran just to get away from him. Of course I looked at Deputy Street and Deputy Buckley, I figured that I could outrun them. Okay. And I took off running.

           I had a great distance on them. And I'm cutting through the parking lot. As I'm cutting through the parking lot there, I'm having to slow down because I'm having to zig-zag through cars. But I still have a - - a good enough distance on them. I hear - - I'm hearing somebody screaming in the back, but I'm not understanding.

           . . .

           I have to slow down to go through the parked cars and cars in the parking lot. Uh, someone is screaming behind me. I originally heard stop, things to that effect, but I wasn't sure after that what they were screaming because I was gaining distance and there was noise in the parking lot.

    . . .

    Q:    And you said you heard [Deputy Street] talking, but you couldn't understand what he was saying; is that right?

    A:    I heard him when I first ran. I can't say who it was, between the two

(continued...)

Further, Defendant was not prejudiced by only one closing argument since he has not shown how this affected the trial's outcome. At the evidentiary hearing, Defendant's ex-trial counsel described his closing argument as "complete" and "detailed." He testified that despite not having a second opportunity to address the jury, that he accomplished his same goal in the one closing, that he was able to argue every point that he desired, and even anticipated and contradicted the prosecutor's arguments to some degree, and had he been given a second closing argument, he would have only reiterated the same points.

(Respondent's Exhibit 18) (court's record citations omitted).

The state post-conviction court determined that Miller failed to demonstrate prejudice resulting from counsel's failure to preserve the hearsay issue for appeal. Miller contends that the state post-conviction court unreasonably applied Strickland in denying relief by failing to analyze the existence of a reasonable probability of a different outcome on appeal if counsel had preserved the issue. Miller's argument focuses on the outcome of his appeal, not the outcome of his trial. In evaluating this claim of ineffective assistance, "the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." Davis v. Sec'y, Dep't of Corr., 341 F.3d 1310, 1316 (11th Cir. 2003).

---

(...continued)
deputies, but when I first ran I heard someone screaming, stop, stop, come back here, things to that effect. But I think they was [sic] trying to catch up after that, and there wasn't too much yelling after that.

. . .

Q:    While you were at the Pendleton car, did you hear any officer say, get back, get back?

A:    No, sir. I heard [an] officer screaming. I knew he was saying something. I don't know what his exact words were, but - - (shaking head negatively) - - I knew he was saying something.

(Case No. 8:02-cv- 1080, Doc. 129, excerpt of January 7, 2004, trial transcript, pp. 14-15, 27, 28).

The state appellate court considered the failure to preserve the hearsay claim only because of a possible retrial on the carjacking charge, not the burglary charge. The granting of a new trial on the carjacking charge resulted from the trial court's denial of a jury instruction on a lesser-included offense, not from counsel's failure to preserve the hearsay issue. To the extent that Miller challenged in his Rule 3.850 motion counsel's actions regarding both the carjacking and burglary convictions, the state post-conviction court reasonably denied relief because Miller failed to demonstrate resulting prejudice from the failure to preserve the issue for appeal.

Miller fails to demonstrate that he heard Deputy Buckley say, "stop or I'll shoot."[28] Miller cannot argue that the statement caused him to seek shelter in either

---

[28] Miller testified at the Rule 3.850 evidentiary hearing that he did not hear this statement:

Q:    Okay. Now isn't it also true that your theory and the reason why you wanted [Officer Buckley]'s statement to be made known to the jury was because - - your theory was you heard the statement, stop, or I'll shoot, and you were trying to hide behind cars to prevent yourself from being shot?

A:    Yes - - no.

Q:    And that's why - - no?

A:    That was the - - I believe [defense counsel]'s strategy, trial strategy at that particular time was to show the effect that it had on me, you know. He was trying to get that statement out showing the effect that had on me behind it.

Q:    Right. That you heard that statement, stop, or I'll shoot, and the effect it had on you was you were trying to hide from him because you heard that statement and you were trying to hide behind - -

A:    Yes, yes.

Q:     - - the cars.

A:    Yes.

(continued...)

Elwell's or Pendleton's vehicle to escape the gunfire.  Consequently, Miller's argument that the state appellate court would have reversed his convictions if counsel had preserved the hearsay issue lacks merit.  Miller fails to meet his burden of proving that the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts in rejecting this ineffective assistance claim.  <u>See</u> 28 U.S.C. § 2254(d).

Miller's contention that he suffered prejudice when he lost the final closing argument likewise lacks merit.  Trial counsel testified at the evidentiary hearing that he made a complete and detailed closing argument and that if given a second closing argument, he would have only reiterated his initial argument (Respondent's Exhibit 16, pp. 19-20).  Miller fails to present evidence demonstrating that if counsel had not called Deputy Buckley as a witness and not lost the opportunity for first and last closing argument, the jury would have acquitted him.  Absent a showing of prejudice, a claim of ineffective assistance of counsel cannot succeed because the

_____

(...continued)

Q:      Okay.

A:      That would be correct.

Q:      Okay.  But isn't it true that you, in fact, did not hear the officer say I'm going to shoot - - or stop, or I'll shoot?  You never heard that full statement, did you?

A:      The full statement, the way that you say it?  No.  What I heard was officers screaming at me.  I can't actually remember the exact words, and now it's been four, almost five years.  However, there were two officers, and they both were screaming several words.

Q:      But you never heard them say stop, or I'll shoot, did you?

A:      I don't remember.

(Respondent's Exhibit 16, pp. 10-11).

requirements of <u>Strickland</u> remain unsatisfied.  Ground eight warrants no federal habeas relief.

**Additional claims**

In a document entitled "amended arguments recently exhausted in the state courts," (Doc. 50) Miller presents two additional claims for relief.  First, he argues a denial of his right to a fair trial based on allegedly fraudulent testimony by Deputy Street.  Second, he argues that fundamental error occurred at his trial when the prosecution failed to prove an essential element of the burglary charge.  Miller asserts that he presented both claims to the state court in a February 26, 2007, motion to vacate which the state court dismissed on April 19, 2007, as untimely.  He states that the state appellate court affirmed the denial of relief on January 4, 2008, in an order without a written opinion.[29]

By Miller's own admission, the state court denied these two claims pursuant to state procedural rules.  A state court's rejection of a petitioner's constitutional claim on a state procedural ground generally precludes federal habeas review of the claim. <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991); <u>Caniff v. Moore</u>, 269 F.3d1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").  "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude

---

[29]  The record contains no copy of this motion to vacate, the order denying relief, or the state appellate court's affirmance of the denial of relief.  However, the state courts' online dockets show a motion to vacate, an order denying relief, and an affirmance on the dates Miller provides.  The respondent filed no response to Miller's additional claims.

federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying upon a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner." Judd v. Haley, 250 F.3d at 1313 (citing Card v. Dugger, 911 F.2d 1494 (11th Cir. 1990)).  See also Ford v. Georgia, 498 U.S. 411, 424-25 (1991).

The state post-conviction court expressly applied a state procedural rule and concluded that Miller could not raise these two claims in a Rule 3.850 motion because he failed to comply with the limitation set forth in Rule 3.850(b).[30]  The state appellate court affirmed the application of the procedural bar.  See Harmon v. Barton, 894 F.2d 1268, 1274 (11th Cir. 1990) (state appellate court's per curiam affirmance of the lower court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state law ground barring federal review).  Florida courts consistently apply the procedural rule barring the

---

[30]  Rule 3.850(b), Florida Rules of Criminal Procedure provides that a defendant must file a motion to vacate no more than two years after the judgment and sentence become final.

collateral review of an untimely claim in a Rule 3.850 motion.  Accordingly, Miller's claims are procedurally defaulted.

This default forecloses federal habeas review absent a showing of either cause and prejudice or a fundamental miscarriage of justice.  Harris v. Reed, 489 U.S. 255, 262 (1989); Smith v. Jones, 256 F.3d at 1138.  Miller fails to demonstrate cause and prejudice excusing his default.

Miller attempts to obtain review of his first amended claim by arguing that the fundamental miscarriage of justice exception to procedural default applies.  A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent.  Schlup v. Delo, 513 U.S. at 327; Henderson v. Campbell, 353 F.3d at 892.  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup v. Delo, 513 U.S. at 327.  This exception requires a petitioner's "actual" innocence.  Johnson v. Alabama, 256 F.3d at 1171.

In his first amended claim, Miller argues that evidence obtained after his criminal trial and introduced at his civil trial demonstrates that Deputy Street testified fraudulently at the criminal trial.  Miller claims that medical evidence and testimony from two expert witnesses introduced at the civil trial showed that the bullet that struck Miller in the right hip entered his back and exited his abdomen.  Miller argues that Deputy Street himself testified at the civil trial that he shot Miller in the back, contradicting Deputy Street's testimony at the criminal trial in which he testified that he fired three shots at Miller and that a bullet struck Miller in the stomach.

-38-

Whether the bullet penetrated Miller's abdomen from the front or the back does nothing to establish Miller's actual innocence of any crime for which he stands convicted. Miller neither establishes a federal constitutional violation of his right to a fair trial nor shows a reasonable probability that no reasonable juror would have convicted him if a discrepancy in Deputy Street's testimony had been revealed at trial. Schlup v. Delo, 513 U.S. at 327; Henderson v. Campbell, 353 F.3d at 892. Miller's failure to establish that the fundamental miscarriage of justice exception applies precludes federal review of his first amended claim.

Accordingly, Miller's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Miller and close this action.

ORDERED in Tampa, Florida, on July 31, 2009.

_____

**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**